

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| | § | No. 08-18-00182-CV |
| IN THE INTEREST OF | § | Appeal from |
| I.D.G., V.A.G., E.R.G., AND R.J.G., | § | 65th District Court |
| CHILDREN. | § | of El Paso County, Texas |
| | § | (TC # 2017DCM6687) |
| | § | |

## <u>O P I N I O N</u>

W.M.U. (Wanda) appeals from the judgment terminating her parental rights to I.D.G., V.A.G., E.R.G., and R.J.G.[1] The trial court also terminated the parental rights of the biological father, V.G., but he has not appealed. Finding that the Texas Department of Family and Protective Services abandoned its request to terminate Wanda's parental rights under Section 161.001(b)(1)(K) of the Texas Family Code, we delete that affirmative finding from the termination order. The termination order, as so modified, is affirmed.

## FACTUAL SUMMARY

Wanda is the mother of four children, I.D.G., V.A.G., E.R.G., and R.J.G. In 2015, Wanda left the children, ranging in age from six years to nine years of age, at the Lee and Beulah

---

[1] To protect the identity of the children, the opinion will refer to W.M.U. by the fictitious name "Wanda", to her mother H.U. by the fictitious name "Helen" and to the children by their initials or collectively as the children. *See* TEX.R.APP.P. 9.8.

Moor Children's Home in El Paso.[2] She provided her mother, Helen, with a power of attorney to consent to medical treatment for the children. The facility is a temporary group home for children whose parents are having difficulty caring for the children. At the Lee Moor Home, the children are provided a safe home, and they receive counseling, attend school, and are provided medical care. The family is encouraged to participate with the children. Wanda visited the children only sporadically, and it was the children's grandmother, Helen, who participated in the majority of the children's events and activities. When Wanda attended events at the home, including counseling sessions, she focused on her telephone rather than engaging with the children. During the time the children were at Lee Moor Home, Helen cared for the children on the weekends. The children remained at the Lee Moor Home until the Fall of 2017.

On August 28, 2017, the Department received a report that Wanda had been in and out of jail and she had fled to Mexico with her boyfriend even though she was on probation. Helen informed the caseworker that she had cared for the children for the last eight years, but she could no longer be responsible for them due to her health issues and the children's behavior. The Department attempted to contact Wanda and V.G., but they could not locate either of them. I.D.G. said she had not seen her mother for several weeks and the younger children had not seen her recently and did not know her location. On October 6, 2017, the Department filed a petition seeking termination of Wanda's and V.G.'s parental rights. That same day, the trial court entered an emergency order naming the Department as the temporary sole managing conservator of the children. The court conducted the final trial in the case on September 14, 2018. Wanda was in federal custody and did not attend the trial. Wanda's criminal history includes federal convictions for human trafficking and importing marijuana. She was convicted on September 23, 2010 of encouraging and inducing the illegal entry of aliens and was placed on

---

[2] Witnesses referred to the facility as the Lee Moor Home or the Lee Moor Children's Home.

probation for five years. The terms of probation required Wanda to take parenting classes. In 2011, she was convicted of importing marijuana. Wanda committed this offense only one month after she was placed on probation for the first offense. The court sentenced her to serve twenty-one months followed by probation for three years. Finally, Wanda was convicted on March 11, 2016 of transporting aliens, and she was sentenced to serve sixteen months in prison followed by supervised release for two years. Wanda's federal probation officer, Karen Eisenberg, testified at trial that she requested issuance of a warrant for Wanda in May 2017 after she left the halfway house and other violations of the terms of her supervised released. The court did not revoke Wanda's supervised release but she was ordered to spend an additional ninety days at the halfway house. Wanda absconded from the halfway house again in September 2017. Following her release from the halfway house in 2018, Wanda was arrested in August 2018 for transporting aliens. At the time of the final hearing in this case, she was in federal custody and facing a new charge as well as revocation of her supervised release.

The trial court found that the Department had proven by clear and convincing evidence that Wanda had: (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children, pursuant to § 161.00l(b)(l)(D), Texas Family Code; (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the child, pursuant to § 161.00l(b)(l)(E), Texas Family Code; (3) executed before or after the suit is filed an unrevoked or irrevocable affidavit of relinquishment of parental rights, pursuant to § 161.001(b)(1)(K), Texas Family Code; (4) constructively abandoned the children who have been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months and: (1) the Department has made

reasonable efforts to return the children to the mother; (2) the mother has not regularly visited or maintained significant contact with the children; and (3) the mother has demonstrated an inability to provide the children with a safe environment, pursuant to § 161.001(b)(l)(N), Texas Family Code; and (5) failed to comply with the provisions of a court order that specifically established the actions necessary for Wanda to obtain the return of the children who have been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the children's removal from the parent under Chapter 262 for the abuse or neglect of the child, pursuant to § 161.001(b)(l)(O), Texas Family Code. The court also found by clear and convincing evidence that termination of Wanda's parental rights was in the children's best interest, and it appointed the Department as the permanent managing conservator of the children.

## PREDICATE TERMINATION GROUNDS

In Issues One through Three, Wanda challenges the legal and factual sufficiency of the evidence supporting the trial court's determination that her parental rights should be terminated based on subsections D, E, and K of Section 161.001(b)(1) of the Texas Family Code. Parental rights may be involuntarily terminated through proceedings brought under Section 161.001 of the Texas Family Code. *See* TEX.FAM.CODE ANN. § 161.001. Under this provision, the petitioner must (1) establish one or more of the statutory acts or omissions enumerated as grounds for termination, and (2) prove that termination is in the best interest of the children. *See id*. Both elements must be established, and termination may not be based solely on the best interest of the child as determined by the trier of fact. *Texas Department of Human Services v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In the Interest of A.B.B.*, 482 S.W.3d 135, 138 (Tex.App.--El Paso 2015, pet. dism'd w.o.j.). Only one predicate finding under Section

161.001(b)(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

We begin by addressing Issue Three which pertains to termination of Wanda's parental rights based on Section 161.001(b)(1)K. The termination order recites that the Department proved by clear and convincing evidence that Wanda's parental rights should be terminated pursuant to subsections D, E, K, N, and O of Section 161.001(b)(1). The record reflects, however, that the Department abandoned its request for termination under Section 161.001(b)(1)(K). Consequently, we sustain Issue Three and modify the judgment by deleting the challenged finding.

In Issues One and Two, Wanda challenges termination of her parental rights pursuant to Section 161.001(b)(1)(D) and (E). She does not, however, address termination of her parental rights under subsections N and O. Because the unchallenged grounds support the termination order, we are not required to address the sufficiency arguments presented in Wanda's first two issues. *See Perez v. Texas Department of Protective and Regulatory Services*, 148 S.W.3d 427, 434 (Tex.App.--El Paso 2004, no pet.). Issues One and Two are overruled.

**BEST INTEREST**

In Issue Four, Wanda contends that the evidence is legally and factually insufficient to support the best interest finding made under Section 161.001(b)(2) of the Family Code.

*Standard of Review*

When reviewing the legal sufficiency of the evidence in a termination case, we consider all of the evidence in the light most favorable to the trial court's finding, "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In the Interest of J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005), *quoting In re J.F.C.,* 96 S.W.3d 256,

266 (Tex. 2002); *see In re J.O.A.,* 283 S.W.3d 336, 344 (Tex. 2009). We give deference to the fact finder's conclusions, indulge every reasonable inference from the evidence in favor of that finding, and presume the fact finder resolved any disputed facts in favor of its findings, so long as a reasonable fact finder could do so. *In the Interest of J.P.B.*, 180 S.W.3d at 573. We disregard any evidence that a reasonable fact finder could have disbelieved, or found to have been incredible, but we do not disregard undisputed facts. *In re J.P.B.*, 180 S.W.3d at 573; *In re J.F.C.*, 96 S.W.3d at 266.

In a factual sufficiency review, the inquiry is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the challenge findings. *See In re J.F.C.*, 96 S.W.3d at 266. We must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing. *In re J.F.C.*, 96 S.W.3d at 266. A court of appeals should consider whether disputed evidence is such that a reasonable fact finder could not have resolved that disputed evidence in favor of its finding. *Id.* If the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

### *The Holley Factors*

A determination of best interest necessitates a focus on the child, not the parent. *See In the Interest of B.C.S.*, 479 S.W.3d 918, 927 (Tex.App.--El Paso 2015, no pet.); *In the Interest of R.F.*, 115 S.W.3d 804, 812 (Tex.App.--Dallas 2003, no pet.). There is a strong presumption that it is in the child's best interest to preserve the parent-child relationship. *In re B.C.S.*, 479 S.W.3d at 927. Several factors must be considered in our analysis of the best interest issue: the child's desires; the child's emotional and physical needs now and in the future; the emotional and

physical danger to the child now and in the future; the parenting abilities of the individuals seeking custody; the programs available to assist those individuals to promote the child's best interest; the plans for the child by those individuals or the agency seeking custody; the stability of the home or proposed placement; the parent's acts or omissions that may indicate that the existing parent-child relationship is not a proper one; and any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976)("the *Holley* factors"). We also must bear in mind that permanence is of paramount importance in considering a child's present and future needs. *In re B.C.S.*, 479 S.W.3d at 927.

We begin by examining the legal sufficiency of the evidence supporting the best interest finding. The first factor is the desires of the children. At the time of trial, I.D.G. was twelve-years-old, V.A.G. was eleven-years-old, E.R.G., was ten-years-old, and R.J.G. was nine-years-old. According to the caseworker, Iliana Ladd, the children are disappointed and upset with mother, and are sad because they want their mother. I.D.G. asked the caseworker why Wanda had them if she was not going to care for them. I.D.G. also stated that she knew her mother was doing drugs and having relationships with men. There is no evidence that the children are mature enough to express a preference as to their placement. *In re A.R.*, 236 S.W.3d 460, 480 (Tex.App.--Dallas 2007, no pet.)(op. on reh'g)(a child's preference should not be considered absent a showing of sufficient maturity). Further, evidence that the children "want their mother" does not necessarily mean that it is the children's desire to be placed with mother.

Evidence that a child is well-cared for by the foster family, is bonded to the foster family, and has spent minimal time in the presence of a parent is relevant to the best interest determination under the desires of the child factor. *See In re R.A.G.*, 545 S.W.3d 645, 653 (Tex.App.--El Paso 2017, no pet.); *In re U.P.*, 105 S.W.3d 222, 230 (Tex.App.--Houston [14th

Dist.] 2003, pet. denied). The overwhelming evidence shows that Wanda has not been involved in the children's lives for several years and she had only twelve visits with them during the pendency of the termination case. The three younger children have been in their current placement since March 2018. They are doing well, participate in family activities, and crave their foster parents' attention. The foster parents plan to adopt them and they are open to fostering I.D.G. if they are able to resolve a foster home licensing issue.[3] I.D.G. was placed with a new foster family on the day of the final hearing. Given Wanda's lack of involvement in the children's lives for several years, we conclude that the first factor weighs in favor of the trial court's best interest finding The next two factors are the children's emotional and physical needs now and in the future, and the emotional and physical danger to the children now and in the future. The youngest child, R.J.G., has behavioral issues which require treatment with medication and therapy. I.D.G. has also received counseling for sexual abuse. The need for permanence is a paramount consideration for a child's present and future physical and emotional needs. *In re R.A.G.*, 545 S.W.3d at 653; *In re U.P.*, 105 S.W.3d at 230. The trial court found that Wanda engaged in conduct endangering to the children. Conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child. *See A.S. v. Texas Department of Family and Protective Services*, 394 S.W.3d 703, 712 (Tex.App.--El Paso 2012, no pet.); *In re M.R.J.M.*, 280 S.W.3d 494, 503 (Tex.App.--Fort Worth 2009, no pet.). Further, a fact finder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent. *In re R.A.G.*, 545 S.W.3d at 653; *In re D.L.N.*, 958 S.W.2d 934, 934 (Tex.App.--Waco 1997, pet. denied). Intentional criminal activity that exposes a parent to incarceration is conduct that endangers the physical and

---

[3] The caseworker testified that the foster parents would be required to obtain a group home license before I.D.G. could be placed with them.

emotional well-being of a child. *Texas Department of Human Services v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). From the time the children were quite young, Wanda repeatedly violated federal law resulting in her incarceration, and she was arrested for a new offense just weeks before the final hearing. Based on the evidence, the trial court could have determined that Wanda would continue to endanger the children in the future by her criminal conduct and abandonment of the children. The second and third factors weigh heavily in support of the best interest finding.

The fourth factor is the parenting abilities of the individuals seeking custody. In reviewing the parenting abilities of a parent, a fact finder can consider the parent's past neglect or past inability to meet the physical and emotional needs of the children. *D.O. v. Texas Department of Human Services*, 851 S.W.2d 351, 356 (Tex.App.--Austin 1993, no writ), *disapproved of on other grounds by In re J.F.C.,* 96 S.W.3d 256 (Tex. 2002). The evidence supports a conclusion that Wanda has poor parenting skills and an inability to care for her children or provide for their basic needs. This factor weighs in favor of the best interest finding.

The fifth factor examines the programs available to assist those individuals to promote the child's best interest. Wanda completed the general parenting classes but she failed to take parenting classes aimed at teaching her parenting skills appropriate for the age of her children as required by her service plan. The trial court could infer from Wanda's failure to take the initiative to utilize the available programs that she would not have the ability to motivate herself in the future. *See In re W.E.C.*, 110 S.W.3d 231, 245 (Tex.App.--Fort Worth 2003, no pet.). The fifth factor supports the best interest finding.

We will consider the sixth and seventh factors together. The sixth factor examines the plans for the child by those individuals or the agency seeking custody. The seventh factor is the

stability of the home or proposed placement. The fact finder may compare the parent's and the Department's plans for the children and determine whether the plans and expectations of each party are realistic or weak and ill-defined. *D.O.*, 851 S.W.2d at 356. The Department's plan is for the three younger children to remain in their current placement and to be adopted by the foster parents. It is possible that I.D.G. will also be placed with her siblings if the foster parents are able to become licensed as a group home. Wanda did not testify at trial or offer any evidence of her own plan for the children. The trial court could have determined that the foster parents will continue to provide the children with a safe and stable home. The sixth and seventh factors weigh in favor of the best interest finding.

The eighth factor is the parent's acts or omissions that may indicate that the existing parent-child relationship is not a proper one. Wanda abandoned the children and endangered them by repeatedly violating federal law which resulted in her incarceration. As a result, she could not provide the stability and permanence needed by the children. Based on this evidence, the trial court could have found that the existing parent-child relationship between Wanda and the children is not a proper one. The eighth factor supports the best interest finding.

Finally, the ninth factor is whether there is any excuse for the parent's acts or omissions. Wanda's brief does not address this factor or offer any excuse for her conduct.

After considering the evidence related to the *Holley* factors, the trial court could have reached a firm conviction that termination of Wanda's parental rights is in the best interest of both children. We conclude that the evidence supporting the best interest finding is supported by both legally and factually sufficient evidence. Issue Four is overruled.

Having sustained Issue Three, we modify the judgment by deleting the trial court's finding that Wanda's parental rights should be terminated pursuant to Section 161.001(b)(1)(K).

Having overruled Issues One, Two, and Four, we affirm the order terminating Wanda's parental rights to I.D.G., V.A.G., E.R.G., and R.J.G. as so modified.

April 9, 2019

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.