272 S.W.3d 45 (2008)
In the Interest of S.N., A Child.
No. 10-08-00132-CV.
Court of Appeals of Texas, Waco.
September 17, 2008.
Opinion Granting Rehearing November 5, 2008.
*48 Stan Schwieger, Richard G. Ferguson, Waco, for relator.
*49 John W. Segrest, McLennan County Dist. Atty., Waco, for respondent.
Charles L. Levy, Waco, for ad litem.
Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

OPINION
FELIPE REYNA, Justice.
The trial court terminated the parent-child relationship between S.N. and her parents following a bench trial. The parents argue that the evidence is legally and factually insufficient to support two of the predicate grounds for termination found by the court or the court's finding that termination is in the best interest of S.N. We will affirm.

Predicate Grounds
The decree recites affirmative findings on four predicate grounds for termination: (1) knowingly placing or allowing the child to remain in dangerous conditions or surroundings; (2) engaging in conduct or knowingly placing the child with persons who engaged in conduct which endangered the child; (3) constructively abandoning the child; and (4) failing to comply with the provisions of a court order establishing the actions necessary for the return of the child. See TEX. FAM.CODE ANN. § 161.001(1)(D), (E), (N), (O) (Vernon Supp.2008).
S.N.'s mother "Nancy"[1] contends in her first two issues that the evidence is factually insufficient to prove a predicate ground for termination under subsection (D) or under subsection (E). "Charles" raises the same complaints in his sole issue but also contends that the evidence is legally insufficient to prove either of these grounds for termination.
The court found four predicate grounds for termination. Nancy and Charles challenge only two of those findings. A parental-rights termination decree must be based on a finding of at least one predicate ground and a finding that termination is in the best interest of the child. TEX. FAM.CODE ANN. § 161.001 (Vernon Supp.2008). If multiple predicate grounds are found by the trial court, we will affirm based on any one ground because only one is necessary for termination of parental rights. In re T.N.F., 205 S.W.3d 625, 629 (Tex.App.-Waco 2006, pet. denied). Therefore, to mount a successful challenge on appeal based on evidentiary insufficiency, a party must challenge each affirmative finding of a predicate ground for termination or at minimum challenge the best interest finding.
Here, because Nancy and Charles challenge only two of the court's four findings on predicate grounds for termination, we need not address their complaints regarding the sufficiency of the evidence to support the predicate grounds for termination.

Best Interest
Nancy and Charles contend that there is legally and factually insufficient evidence to support the court's finding that termination of the parent-child relationship is in the best interest of the child.
The applicable standards of review for parental-rights termination cases are settled.
In a legal sufficiency review, a court should look at all the evidence in the light most favorable to the finding to *50 determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible.
In re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002); T.N.F., 205 S.W.3d at 630.
In conducting a factual sufficiency review, "a court of appeals must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." Id.
[T]he inquiry must be "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." A court of appeals should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient.
J.F.C., 96 S.W.3d at 266 (quoting In re C.H., 89 S.W.3d 17, 25 (Tex.2002)) (footnotes omitted); T.N.F., 205 S.W.3d at 630.
The primary factors to consider when evaluating whether termination is in the best interest of the child are the familiar Holley factors, which include:
(1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent.
Holley v. Adams, 544 S.W.2d 367, 372 (Tex.1976); T.N.F., 205 S.W.3d at 632.
These factors are not exhaustive and need not all be proved as a condition precedent to termination. C.H., 89 S.W.3d at 27; T.N.F., 205 S.W.3d at 632.
The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child. Other cases, however, will present more complex facts in which paltry evidence relevant to each consideration mentioned in Holley would not suffice to uphold the jury's finding that termination is required.
C.H., 89 S.W.3d at 27; accord T.N.F., 205 S.W.3d at 633.
For cases in which the Department or another government agency is the petitioner, section 263.307(a) of the Family Code provides that "the prompt and permanent placement of the child in a safe environment is presumed to be in the child's best *51 interest." TEX. FAM.CODE ANN. § 263.307(a) (Vernon 2002). Subsection (b) then lists thirteen factors to consider in determining whether a parent is "willing and able to provide the child with a safe environment." Id. § 263.307(b) (Vernon 2002). We will likewise give consideration to these factors to the extent applicable. See In re R.R., 209 S.W.3d 112, 116 (Tex. 2006) (per curiam); T.N.F., 205 S.W.3d at 633 & n. 3. We will address the best-interest finding separately for each parent.

Nancy
Nancy contends in her third issue that the evidence is factually insufficient to support the finding that termination of her parental rights is in S.N.'s best interest.
Desires of the Child: S.N. was sixteen months' old at the time of trial. Her attorney ad litem contends that S.N.'s actions are indicative of her desires. For example, counsel suggests that, because S.N. cried "uncontrollably" during Nancy's first visit (when S.N. was six months' old), this is evidence that she does not desire to have a permanent relationship with her mother. Counsel also suggests that, because S.N. refers to her foster parents[2] as "mommy" and "daddy," this is evidence that she prefers them over her biological parents.
We disagree with the ad litem's contention. Evidence that a parent is unable to console her infant child may be relevant to other of the Holley factors, such as the emotional and physical needs of the child and the parental abilities of the parent, but it is doubtful that such evidence is indicative of the infant's conscious, volitional desire to maintain a parent-child relationship or to permanently sever that relationship. It is likewise doubtful that evidence an infant or toddler refers to her foster parents as "mommy" and "daddy" is probative on this issue.
It has long been established in a custody proceeding, that the preference of the child as to its managing conservator, although not controlling, may be weighed along with other evidence in making that decision. However, it is equally well-established that before such testimony may be received, the child must be of a sufficiently mature age to judge for itself.
In re Marriage of D.M.B., 798 S.W.2d 399, 402 (Tex.App.-Amarillo 1990, no writ); see In re A.R., 236 S.W.3d 460, 480 (Tex.App.-Dallas 2007, no pet.) (court need not consider child's wishes in termination proceeding absent evidence that "child was sufficiently mature to express a parental preference"); Tiller v. Villasenor, 426 S.W.2d 257, 258 (Tex.Civ.App.-Houston [1st Dist.] 1968, no writ) (child's preference may be considered in custody dispute if child is "of sufficiently mature age"); Dunn v. Jackson, 231 S.W. 351, 353 (Tex. Comm'n App.1921, holding approved) ("The wishes of a child whose custody is in controversy may, if it be of a sufficiently mature age to judge for itself, be consulted and weighed with other testimony in determining the issue."); see also TEX. FAM. CODE ANN. §§ 153.008, 153.009 (Vernon Supp.2008).[3]Contra In re D.J., 100 *52 S.W.3d 658, 667 (Tex.App.-Dallas 2003, pet. denied) (referring to evidence child "cried `very hard' or screamed when held by Father and Father was unable to console [him]" as relevant to this issue while acknowledging child was "too young to verbally express his desires").
Thus, we hold that evidence of an infant's or toddler's conduct and statements like those of S.N. is not relevant to the issue of whether the child desires termination of the parent-child relationship. See A.R., 236 S.W.3d at 480; D.M.B., 798 S.W.2d at 402; Tiller, 426 S.W.2d at 258; Dunn, 231 S.W. at 353. Instead, we agree with Nancy that there is no evidence in the record relevant to this factor.
Child's Emotional and Physical Needs: CPS Supervisor Jesse Guardiola testified that a child S.N.'s age requires "constant supervision and care" to meet her physical needs and requires parents who are available "24/7" to meet her emotional needs. In the report from Nancy's last counseling session, the counselor concluded, "[Nancy] is not presently capable of providing a safe and nurturing environment for [S.N.]." He states in his consultation report, "[Nancy] has not made any behavioral changes due to her alcohol abuse. She requires substance abuse counseling in order to confront this issue." Guardiola testified that a parent who abuses alcohol is not capable of providing for the emotional needs of a young child like S.N.
Nancy counters that there is no evidence that she failed to provide for S.N.'s physical and emotional needs before removal or that S.N. has any special needs which require abilities Nancy does not have or could not acquire. The CPS caseworker involved with the family at the beginning of CPS's involvement testified that S.N. had thrush at his initial visit. When Nancy told him they were new to the area and did not have a primary care physician, he made an appointment for them. Nancy took S.N. to the doctor and treated her in accordance with the doctor's instructions. The caseworker testified that Nancy had appropriately addressed S.N.'s medical needs. The caseworker ultimately determined that S.N. should be removed from the home because Nancy and Charles declined to submit to a parenting assessment and admittedly used illegal narcotics in their home.
Therefore, the record contains conflicting evidence regarding whether Nancy is capable of providing for S.N.'s physical and emotional needs.
Emotional and Physical Danger to Child: Evidence of illegal drug use or alcohol abuse by a parent is often cited as conduct which will support an affirmative finding that the parent has engaged in a course of conduct which has the effect of endangering the child. See, e.g., Toliver v. Tex. Dep't of Family & Protective Servs., 217 S.W.3d 85, 98 (Tex.App.-Houston [1st Dist.] 2006, no pet.); In re S.E.W., 168 S.W.3d 875, 882 (Tex.App.-Dallas 2005, no pet.); Phillips v. Tex. Dep't of Protective & Regulatory Servs., 149 S.W.3d 814, 819-20 (Tex.App.-Eastland 2004, no pet.); In re U.P., 105 S.W.3d 222, 234 (Tex.App.-Houston [14th Dist.] 2003, pet. denied). While such evidence is generally considered in evaluating the predicate grounds for termination, it is also relevant in determining whether a parent poses a present or future risk of physical or emotional danger to the child. See, e.g., Doe v. Brazoria County Child Protective Servs., 226 S.W.3d 563, 574 (Tex.App.-Houston [1st Dist.] 2007, no pet.); In re K.C., 219 S.W.3d 924, 928-29 (Tex.App.-Dallas 2007, no pet.); In re S.B., 207 S.W.3d 877, 887 (Tex.App.-Fort Worth 2006, no pet.).
We have already described the counselor's observations regarding Nancy's substance abuse. Other witnesses testified *53 that Nancy abused drugs and alcohol during the months leading up to trial. She also tested positive for methamphetamine on one occasion and admitted to a CPS investigator on a prior occasion that she would have tested positive for cocaine and marihuana if she had been tested.
Nancy denied using any illegal drugs within the past three years and denied that she has a drinking problem. She refers to statements of counsel at trial, including the ad litem, conceding a lack of evidence to support an affirmative finding under predicate ground (P) that Nancy used a controlled substance in a manner that endangered S.N. and failed to complete a court-ordered substance-abuse treatment program. See TEX. FAM.CODE ANN. § 161.001(1)(P) (Vernon Supp.2008). From the record, it appears that the parties and the court agreed that no affirmative finding should be made on this predicate ground because there was no evidence Nancy used a controlled substance in S.N.'s presence and because she was never ordered to participate in a substance-abuse treatment program.
Thus, despite the lack of evidence that Nancy used a controlled substance in S.N.'s presence, we hold that the evidence of her continuing drug and alcohol abuse supports a finding that she poses a present and future risk of physical or emotional danger to the child and that termination would be in the best interest of S.N. See Doe, 226 S.W.3d at 574; K.C., 219 S.W.3d at 928-29; S.B., 207 S.W.3d at 887.
Parental Abilities: The evidence that Nancy was unable to console S.N. over a 45-minute period during the first visit is some evidence that she lacks parental abilities. Her counselor's records indicate that she "completed parent training" but notes concerns about her lack of plans for the future and continuing substance abuse. Nevertheless, the evidence of the home environment and S.N.'s condition during CPS's initial involvement suggest that Nancy's parenting was adequate to care for S.N.'s basic needs. Therefore, the record contains conflicting evidence regarding whether Nancy has adequate parental abilities.
Available Programs: Nancy refers to evidence that she participated in and successfully completed several programs made available to her. The record contains no evidence that similar programs would not be available in the future. Thus, the evidence relevant to this factor does not support the best-interest finding.
Plans for Child: According to the counselor's report, Nancy has "presented no plan for her or [S.N.'s] future and did not appear motivated to do so." Guardiola testified that CPS's plans are for S.N.'s foster parents to adopt her. Nancy presented no evidence regarding her future plans for herself or S.N. Therefore, the evidence relevant to this factor supports the best-interest finding.
Stability of Home: Guardiola testified that the foster parents are providing "a stable, loving home" for S.N. The foster mother testified that her husband and she had provided for all of S.N.'s physical needs and described in particular her visits with a pediatrician to appropriately deal with S.N.'s medical needs. Nancy herself testified that the foster parents have provided S.N. a stable home. Conversely, Nancy has not been able to maintain a stable home and specifically testified that she does not have "a safe place" for S.N. to live. She concedes that the evidence relevant to this factor supports the best-interest finding.
Nancy's Acts and Omissions: The evidence regarding Nancy's continuing substance abuse and her failure to maintain a stable home also constitute evidence of *54 acts and omissions which support the best-interest finding. She has also failed to maintain employment, testifying that she had two jobs at different points during CPS's involvement but was fired from both of them. She has been unemployed during most of the 11-month period between removal and the trial. Despite provisions for regular visitation, Nancy visited with S.N. only twice after removal. She conceded at trial that S.N. "doesn't really know who [Nancy] is." Thus, Nancy's continuing substance abuse, her failure to maintain a stable home, and her failure to take advantage of visitation and develop a closer relationship with S.N. all support the best-interest finding.
Excuses for Nancy's Acts and Omissions: Nancy testified that she was fired from her two jobs "because of CPS." After CPS took custody of S.N., Nancy returned to her hometown in west Texas, which limited her ability to have regular visitation. She explained that she didn't move closer to S.N. because she doesn't know "anybody in Waco," which is where she lived at the time of removal. She stated that she failed to obtain medical care for S.N. before removal because of a lack of transportation and because she "[d]idn't know a doctor here in town" (although she "was looking for one"). Therefore, if the court accepted Nancy's testimony as credible, it would tend to contradict the best-interest finding.
Statutory Factors: Evidence regarding five of the thirteen statutory factors listed in section 263.307(b) support the best-interest finding: (a) S.N.'s age and physical and mental vulnerabilities; (b) the counselor's evaluation of Nancy's readiness for parenting; (c) Nancy's substance abuse; (d) Nancy's lack of motivation to improve her situation; and (e) the lack of an adequate social support system for Nancy. See TEX. FAM.CODE ANN. § 263.307(b)(1), (6), (8), (11), (13). Four of the statutory factors do not apply. Id. § 263.307(b)(2), (5), (7), (9).[4] The evidence regarding two of the statutory factors is conflicting, so we consider these factors to be neutral: (a) Nancy's willingness "to seek out, accept, and complete counseling services" and cooperate with CPS; and (b) Nancy's demonstration of adequate parenting skills. Id. § 263.307(b)(10), (12). And the evidence regarding two of the statutory factors tends to contradict the best-interest finding: (a) "the magnitude, frequency, and circumstances of the harm to the child"; and (b) "whether the child has been the victim of repeated harm after the initial report and intervention by the department." Id. § 263.307(b)(3), (4).
Summary: Our evaluation of whether the evidence supports a best-interest finding does not involve a precise mathematical calculation despite the listing of relevant factors. See C.H., 89 S.W.3d at 27; T.N.F., 205 S.W.3d at 632. Considering all the evidence in a neutral light, we hold that the evidence is such that the court "could reasonably form a firm belief or conviction" that termination of Nancy's parental rights is in the best interest of S.N. See T.N.F., 205 S.W.3d at 634. Therefore, we overrule Nancy's third issue.

Charles
Charles contends as part of his sole issue that there is legally and factually *55 insufficient evidence to support the best-interest finding.
Desires of the Child: We have already determined that there is no evidence in the record relevant to this factor.
Child's Emotional and Physical Needs: Guardiola testified about S.N.'s need for "constant supervision and care" and opined that persons engaged in substance abuse cannot meet this need. Guardiola testified in particular that Charles is not capable of providing for S.N.'s needs. The record contains evidence that Charles used illegal narcotics at the time of removal, though he denies it. He later pleaded guilty to possession of cocaine and is presently on community supervision for that offense. He testified that he has talked to S.N. only once since her removal and that his job "is a 24-hour call" which effectively prevents him from providing for S.N.'s needs because he's never home.[5] He conceded that he does not presently "have a safe place for [S.N.] to live." Thus, the evidence relevant to this factor supports the best-interest finding.
Emotional and Physical Danger to Child: This factor focuses on present and future danger to the child. See Holley, 544 S.W.2d at 372; T.N.F., 205 S.W.3d at 633. While the record contains evidence of past narcotics usage, there is no evidence that Charles has continued to use illegal drugs since removal. This is further corroborated by the fact that he has successfully remained on community supervision despite provisions for regular drug testing as a condition of community supervision. Therefore, the evidence relevant to this factor tends to contradict the best-interest finding.
Parental Abilities: Guardiola testified that Charles has not demonstrated any parental abilities. Charles argues that, though the evidence indicates that he "needs more training in parenting skills," there is no evidence that "he lacks the ability to learn those skills." However, the record reflects that Charles did not take advantage of parenting classes recommended from the beginning of CPS's involvement. A trial on the merits is not the time for a parent facing termination of his parental rights to express for the first time an interest in learning appropriate parenting skills. The evidence regarding Charles's lack of parenting skills and his failure to take advantage of the parenting classes offered supports the best-interest finding.
Available Programs: We have already addressed the evidence that Charles failed to take advantage of the programs made available to him. Thus, the evidence relevant to this factor supports the best-interest finding.
Plans for Child and Stability of Home: Charles testified that he is not ready to take custody of S.N., that he does not have a safe place for her to live, and that he would like for her to live with his mother. Guardiola testified that CPS's plans are for S.N.'s foster parents to adopt her and that they have been providing her a safe, stable home. Therefore, the evidence relevant to these factors supports the best-interest finding.
Charles's Acts or Omissions and Excuses for Them: Charles conceded that he has had virtually no contact with S.N. since her removal and he has provided no financial support for her despite having a good-paying job. He has failed to take advantage of parenting classes and other services made available to him to regain custody of S.N., and he was admittedly not *56 ready to take custody of her at the time of trial. Charles's excuses for these omissions are: (1) his job prevented him from complying with the plan of service; (2) he has to keep his job in order to remain in compliance with the conditions of his community supervision; and (3) he has no friends or relatives in the area where S.N. lives with her foster parents. On cross-examination, he agreed that he could conceivably get a different job closer to where S.N. lives and have his community supervision transferred to that county.[6]
The evidence regarding Charles's acts and omissions supports the best-interest finding. The evidence relevant to his excuses for his acts and omissions is conflicting.
Statutory Factors: With regard to Charles, five of the statutory factors support the best-interest finding: (a) S.N.'s age and physical and mental vulnerabilities; (b) Charles's history of substance abuse; (c) his failure to submit to a recommended parenting assessment or other recommended services; (d) his failure to establish a safe home environment for S.N.; and (e) his lack of parenting skills. See TEX. FAM.CODE ANN. § 263.307(b)(1), (8), (10), (11), (12). Five of the statutory factors do not apply. Id. § 263.307(b)(2), (5), (6), (7), (9).[7] And the evidence regarding three of the statutory factors tends to contradict the best-interest finding: (a) "the magnitude, frequency, and circumstances of the harm to the child"; (b) "whether the child has been the victim of repeated harm after the initial report and intervention by the department"; and (c) whether Charles has "an adequate social support system" available for S.N. Id. § 263.307(b)(3), (4), (13).
Summary: Charles himself conceded on cross-examination that S.N. "is best remaining with CPS for now." Considering all the evidence in the light most favorable to the best-interest finding, a reasonable trier of fact could have formed a firm belief or conviction that termination of Charles's parental rights is in the best interest of S.N. See T.N.F., 205 S.W.3d at 634. And viewing all the evidence in a neutral light, we hold that the evidence is such that the court "could reasonably form a firm belief or conviction" that termination is in the best interest of S.N. Id. Therefore, we overrule Charles's sole issue insofar as it challenges the best-interest finding.

Conclusion
Nancy and Charles did not challenge all of the predicate grounds for termination which the trial court found. Therefore, we have not addressed their challenges to two of the predicate grounds found. The evidence is legally and factually sufficient to support the court's findings that termination of the parent-child relationship is in the best interest of the child with regard to each of them. Accordingly, we affirm the judgment.
Chief Justice GRAY concurs in the judgment only to the extent it affirms the trial court's order that terminated the parental rights. A separate opinion will not issue.

*57 OPINION ON REHEARING
Appellants have filed motions for rehearing in which they each contend that this Court should address their legal and factual insufficiency complaints challenging two of the four predicate grounds for termination of their parental rights because, even if the outcome of this appeal remains unchanged, collateral consequences may attach to the adverse findings which they challenge. We will grant rehearing and address the merits of these complaints. Nevertheless, our initial decision to affirm the judgment will not change.

Death of Party
After filing the motion for rehearing, counsel for Appellant "Charles" filed a motion to dismiss because of Charles's recent death. Counsel cites Olson v. Commission for Lawyer Discipline, 901 S.W.2d 520 (Tex.App.-El Paso 1995, no writ), for the proposition that the appeal is now moot because there are no property rights at stake. According to Olson, a civil appeal is rendered moot by the death of a party unless "the judgment affected the parties' property rights, as opposed to purely personal rights." Id. at 523-24; accord Casillas v. Cano, 79 S.W.3d 587, 591-92 (Tex.App.-Corpus Christi 2002, no pet.).
In this appeal, however, the judgment does affect property rights. If it were determined that the termination decree should be reversed, then the parent-child relationship between Charles and his daughter would be restored, and she would potentially be entitled to a share of his estate. Accordingly, the appeal has not been rendered moot by Charles's death. See Dunn v. Dunn, 439 S.W.2d 830, 834 (Tex.1969); Verret v. Verret, 570 S.W.2d 138, 140 (Tex.Civ.App.-Houston [1st Dist.] 1978, no writ).
But while the appeal as a whole has not been rendered moot, the relief sought in the motion for rehearing filed on Charles's behalf will not change the outcome. Accordingly, we grant counsel's motion to dismiss insofar as counsel requests dismissal of the motion for rehearing as moot.

Breadth of Opinion
The current appellate rules are written to discourage appellate courts from addressing much beyond what is "necessary" in opinions. There are a number of practical and historical reasons for this emphasis on shorter opinions. But here we consider whether and when an appellate court's opinion should address more than that which is minimally "necessary" to resolve the appeal.
Rule of Appellate Procedure 47.1 addresses the scope of appellate court opinions, providing, "The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal." TEX.R.APP. P. 47.1; see also Tex. Disposal Sys., Inc. v. Perez, 80 S.W.3d 593, 594 (Tex.2002) (per curiam). This is not a new standard. See TEX.R.APP. P. 90(a), 707-708 S.W.2d (Tex. Cases) lxxxv (Tex.1986, amended 1997);[1] TEX.R. CIV. P. 452(a), 629-630 S.W.2d (Tex. *58 Cases) xli (Tex.1982, repealed 1986);[2]Lone Star Gas Co. v. R.R. Comm'n of Tex., 767 S.W.2d 709, 710 (Tex.1989) (per curiam); see also El Campo Ice, Light & Water Co. v. Tex. Mach. & Supply Co., 147 S.W. 338, 340 (Tex.Civ.App.-Dallas 1912, writ denied) (declining to address additional points which would not affect disposition); Worcester v. Galveston, Harrisburg & San Antonio Ry., 91 S.W. 339, 343-44 (Tex.Civ.App.-San Antonio 1905, no writ) (op. on reh'g) (same).
An initial issue presented in Nancy's motion for rehearing is whether an appellate court may address additional issues which have been properly raised and presented but which are not "necessary" to the final disposition of the appeal. The short answer is yes. See, e.g., Edinburgh Hosp. Auth. v. Trevino, 941 S.W.2d 76, 81 (Tex.1997) (addressing issue not essential to disposition of appeal to provide trial court with guidance on retrial); Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d 623, 626 (Tex.1996) (appellate court may consider summary-judgment grounds "that the movant preserved for review and trial court did not rule on in the interest of judicial economy"); FFP Mktg. Co. v. Long Lane Master Trust IV, 169 S.W.3d 402, 411 (Tex.App.-Fort Worth 2005, no pet.) (addressing additional issue "in the interest of judicial economy"); In re J.B., 93 S.W.3d 609, 617 (Tex.App.-Waco 2002, pet. denied) (addressing additional issues likely to arise on retrial). But the more relevant question is when should an appellate court exercise its discretion to address additional issues.
With the 2002 amendments to the appellate rules came an increased emphasis on the brevity of appellate opinions. In 2002, the Supreme Court amended Rule of Appellate Procedure 47.4 to govern the issuance of "brief memorandum opinion[s]" in lieu of the predecessor rule which governed when opinions should be[3]Compare TEX.R.APP. P. 47.4 with TEX.R.APP. P. 47.4, 948-949 S.W.2d (Tex.Cases) cxxx (Tex. 1997, amended 2002). Under current Rule 47.4:
An opinion must be designated a memorandum opinion unless it does any of the following:
(a) establishes a new rule of law, alters or modifies an existing rule, or *59 applies an existing rule to a novel fact situation likely to recur in future cases;
(b) involves issues of constitutional law or other legal issues important to the jurisprudence of Texas;
(c) criticizes existing law; or
(d) resolves an apparent conflict of authority.[4]
TEX.R.APP. P. 47.4 (emphasis added).
The increased emphasis on brevity was driven primarily by the Texas Legislature. See APPELLATE COURT PERFORMANCE MEASURES SUBCOMM., JUDICIAL PERFORMANCE MEASURES COMM., TEX. JUDICIAL COUNCIL, PERFORMANCE MEASURES: TEXAS COURTS OF APPEALS 9 (2000), http://www.courts.state. tx.us/tjc/publications/ Perf_Measure/COA/Final_Report.pdf. In 1999, the 76th Legislature directed the Texas Judicial Council to:
develop measures which evaluate the work of individual justices on the courts of appeals. The measures developed by the Texas Judicial Council must be approved by the Legislative Budget Board and the Governor's Office. The data obtained for these measures will be reported in the Texas Judicial System Annual Report.
Act of May 26, 1999, 76th Leg., R.S., ch. 1589, art. IV, § 1, 1999 Tex. Gen. Laws 5446, 5938.
In response to this legislative directive, the Texas Judicial Council created a Committee on Judicial Performance Measures which charged its own Subcommittee on Appellate Court Performance Measures "to make recommendations to the Committee and to the full Council as to the best means for complying with the rider." PERFORMANCE MEASURES SUBCOMM., PERFORMANCE MEASURES at 9. After surveying the justices of the intermediate appellate courts and gathering data from the other states, the Subcommittee identified several factors which make it impractical and imprudent to establish performance measures for individual justices. See id. at 13-15. Instead, the Subcommittee made the following recommendations:
(1) The current performance measures that were developed by the courts of appeals, the Legislative Budget Board (LBB), and the Governor's Office of Budget and Planning should continue to be used for caseload management by each court in accordance with uniform data reporting standards approved by the courts of appeals. Through the Council of Chief Justices' Committee on Docket Equalization and Performance Measures, the courts of appeals should continue to ensure that there is uniform reporting of these measures.
(2) While the development of accurate and reliable quantitative measures to evaluate the performance of individual court of appeals justices is not practicable, the courts of appeals should continuously find ways to operate efficiently without sacrificing the quality of justice while remaining true to the rule of law.[5]

*60 (3) The Office of Court Administration, with input and guidance from the courts of appeals, should continue to study whether the statistical data currently reported and published is presented in a clear, understandable format and what, if any, additional data should be collected.
Id. at 28-31 (footnote added).
In addition to a legislatively mandated quest for efficiency, an important limiting factor which must guide an appellate court's determination of which "additional" issues to address, if any, is the constitutional prohibition against issuance of advisory opinions. Article II, section 1 of the Texas Constitution provides for the separation of governmental powers among the three branches of government. TEX. CONST. art. II, § 1. The Supreme Court has construed this provision in part as prohibiting courts "from issuing advisory opinions that decide abstract questions of law without binding the parties, as that is a function of the executive rather than the judicial branch." S. Tex. Water Auth. v. Lomas, 223 S.W.3d 304, 307 (Tex.2007).
Finally, there is the settled principle that courts should exercise restraint when deciding cases. "[T]he cardinal principle of judicial restraint  if it is not necessary to decide more, it is necessary not to decide more  counsels us to go no further." VanDevender v. Woods, 222 S.W.3d 430, 433 (Tex.2007) (quoting PDK Labs., Inc. v. U.S. Drug Enforcement Admin., 362 F.3d 786, 799 (D.C.Cir.2004) (Roberts, J., concurring)).

Balancing Restrictions with Rights
In defining what "additional issues" should be addressed in an appellate opinion, we must balance a need to exercise judicial restraint and the foregoing limitations on our authority with the rights of the litigants. As a matter of due process, a parent appealing from a termination decree has a right to meaningful appellate review. See In re D.M., 244 S.W.3d 397, 413 (Tex.App.-Waco 2007, no pet.). A child in a termination proceeding shares her parent's interest in preventing the erroneous termination of the parent-child relationship until parental unfitness is established. In re M.S., 115 S.W.3d 534, 547-48 (Tex.2003); D.M., 244 S.W.3d at 409 & n. 7. "[T]he State shares the parent's interest in an accurate and just decision." In re B.L.D., 113 S.W.3d 340, 353 (Tex.2003); accord D.M., 244 S.W.3d at 412. And the State has an interest in the prompt resolution of a termination proceeding. See M.S., 115 S.W.3d at 548; D.M., 244 S.W.3d at 412 & n. 10. Undoubtedly, parent and child share this interest as well.
Here, Nancy contends that the evidence is factually insufficient to support the court's findings that: (1) she knowingly placed or allowed S.N. to remain in dangerous conditions or surroundings; and (2) she engaged in conduct or knowingly placed S.N. with persons who engaged in conduct which endangered the child. See TEX. FAM.CODE ANN. § 161.001(1)(D), (E) (Vernon Supp.2008). On rehearing, she notes that an affirmative finding on either of these grounds could be used to support termination of her parental rights with respect to any future child she may have. Id. § 161.001(1)(M) (Vernon Supp.2008).
Similar to criminal cases, this may be classified as a "collateral consequence" of *61 the court's affirmative findings on these predicate grounds. Cf. Scott v. State, 55 S.W.3d 593, 597 (Tex.Crim.App.2001) ("[t]he resolution of criminal charges will always carry the possibility of collateral consequences"); In re E.M.N., 221 S.W.3d 815, 825 n. 13 (Tex.App.-Fort Worth 2007, no pet.) (termination of parental rights was collateral consequence of mother's conviction for murder of child's father). A criminal defendant may challenge such collateral consequences in a habeas application. TEX.CODE CRIM. PROC. ANN. art. 11.07, § 3(c) (Vernon Supp.2008); see Lebo v. State, 90 S.W.3d 324, 327 n. 8 (Tex.Crim.App.2002); Ex parte Hargett, 819 S.W.2d 866, 867 (Tex.Crim.App.1991); In re Altschul, 207 S.W.3d 427, 429 (Tex.App.-Waco 2006, pet. ref'd).
However, a person whose parental rights have been terminated must file any collateral attack on the termination decree within six months after the decree is signed. See TEX. FAM.CODE ANN. § 161.211 (Vernon 2002); B.L.D., 113 S.W.3d at 353. But cf. TEX. CONST. art. I, § 12 ("The writ of habeas corpus is a writ of right, and shall never be suspended."); see Foster v. Foster, 230 S.W. 1064, 1064-65 (Tex.Civ. App.-Galveston 1921, writ dism'd) (district court has authority to grant habeas relief by modifying custody determination rendered in a different district court); see also Legate v. Legate, 87 Tex. 248, 28 S.W. 281, 282 (1894) (district court has jurisdiction to grant habeas relief in child custody matter).
According to section 161.211, Nancy has no available legal remedy to challenge the collateral consequences flowing from the termination decree. Because of this, any failure on our part to address the merits of her complaint regarding the two predicate grounds for termination at issue effectively deprives her of the "meaningful appellate review" to which she is entitled as a matter of due process. See D.M., 244 S.W.3d at 413.
Nevertheless, the attorney ad litem and the State contend that any further review in this case is contrary to S.N.'s best interest and the State's interest in providing her a stable, permanent home. We do not disagree that these are important considerations. In the context of this case, however, we hold that Nancy's right to meaningful appellate review requires that we address the merits of her complaints.

Dangerous Conditions or Surroundings
Nancy contends in her first issue that the evidence is factually insufficient to prove that she knowingly placed or allowed S.N. to remain in dangerous conditions or surroundings.
The Department focuses on Nancy's drug and alcohol abuse as the primary evidence supporting this finding. However, this predicate ground for termination is concerned with S.N.'s "conditions and surroundings" rather than Nancy's "conduct."[6]Compare TEX. FAM.CODE ANN. § 161.001(1)(D) with TEX. FAM.CODE ANN. § 161.001(1)(E); see In re S.K., 198 S.W.3d 899, 902 (Tex.App.-Dallas 2006, pet. denied); In re D.J.J., 178 S.W.3d 424, 429 (Tex.App.-Fort Worth 2005, no pet.).
The record contains conflicting evidence regarding Nancy's abuse of drugs and alcohol. Nevertheless, the parties and the *62 court appear to have agreed that there is no evidence she used a controlled substance in S.N.'s presence. In addition, the limited evidence in the record regarding the home environment at the time of S.N.'s removal suggests that Nancy provided S.N. with adequate living conditions which did not endanger her physical or emotional well-being.
Therefore, we hold that the evidence is factually insufficient to sustain the jury's finding that Nancy knowingly placed or allowed S.N. to remain in dangerous conditions or surroundings. See D.J.J., 178 S.W.3d at 429-30. Accordingly, we sustain Nancy's first issue.

Nancy's Conduct
Nancy contends in her second issue that the evidence is factually insufficient to prove that she engaged in conduct or knowingly placed S.N. with persons who engaged in conduct which endangered S.N.
Evidence of illegal drug use or alcohol abuse by a parent is often cited as conduct which will support an affirmative finding that the parent has engaged in a course of conduct which has the effect of endangering the child. See, e.g., In re C.R., 263 S.W.3d 368, at 371 (Tex.App.-Dallas 2008, no pet.); In re M.R., 243 S.W.3d 807, 818-19 (Tex.App.-Fort Worth 2007, no pet.); Toliver v. Tex. Dep't of Family & Protective Servs., 217 S.W.3d 85, 98 (Tex.App.-Houston [1st Dist.] 2006, no pet.).
Nancy's substance abuse counselor stated in his consultation report, "[Nancy] has not made any behavioral changes due to her alcohol abuse. She requires substance abuse counseling in order to confront this issue." Other witnesses testified that Nancy abused drugs and alcohol during the months leading up to trial. She also tested positive for methamphetamine on one occasion and admitted to a CPS investigator on a another occasion that she would have tested positive for cocaine and marihuana if she had been tested.
Conversely, Nancy denied using any illegal drugs within the past three years and denied that she has a drinking problem.
Although there is conflicting evidence on the issue, we hold that the evidence regarding Nancy's history of substance abuse and her inability or unwillingness to admit she has this problem or try to address it is such that the jury could reasonably form a firm belief or conviction that she engaged in conduct which endangered S.N. See C.R., 263 S.W.3d 368, 2008 WL 1960816, at *5; M.R., 243 S.W.3d at 818-19; Toliver, 217 S.W.3d at 100-01; see also In re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002) (providing standard of review). Therefore, we overrule Nancy's second issue.

Conclusion
We dismiss Charles's motion for rehearing as moot due to his death. We grant Nancy's motion for rehearing. Because we have overruled Nancy's second issue, because she does not challenge two of the predicate grounds for termination found by the court, and because we have previously overruled Nancy's third issue challenging the court's best-interest finding, our prior decision affirming the trial court's judgment remains undisturbed.
Chief Justice GRAY concurs in the judgment of the Court. A separate opinion will not follow. He provides the following note.[*]
NOTES
[1] To protect the identity of the child who is the subject of this suit, we shall refer hereinafter to the mother by the pseudonym "Nancy" and to the father by the pseudonym "Charles." See TEX. FAM.CODE ANN. § 109.002(d) (Vernon 2002); TEX.R.APP. P. 9.8(b)(1).
[2] S.N.'s foster parents are her great-uncle and great-aunt.
[3] Section 153.008 of the Family Code permits a child 12 or older to make a written statement indicating which person he prefers to have the exclusive right to designate his primary residence. TEX. FAM.CODE ANN. § 153.008 (Vernon Supp.2008). Section 153.009 similarly provides that a trial court shall on request interview a child 12 or older regarding the child's wishes as to conservatorship or designation of primary residence and may interview a younger child regarding these matters. Id. § 153.009 (Vernon Supp. 2008).
[4] The factors which we deem inapplicable are: (a) frequency and nature of out-of-home placements; (b) whether S.N. is fearful of returning to Nancy's home; (c) whether there is a history of abusive conduct in the home; and (d) whether the perpetrator of harm to S.N. has been identified. See TEX. FAM.CODE ANN. § 263.307(b)(2), (5), (7), (9) (Vernon 2002).
[5] Charles testified that he worked 107 hours the week before trial. His employment as a pipe inspector requires him to travel throughout Texas and New Mexico.
[6] Charles was arrested on the cocaine charge in Waco shortly before S.N. was removed from the home in March 2007. He returned to his hometown in west Texas about one month later.
[7] The factors which we deem inapplicable are: (a) frequency and nature of out-of-home placements; (b) whether S.N. is fearful of returning to the home; (c) results of psychiatric or psychological evaluation; (d) whether there is a history of abusive conduct in the home; and (e) whether the perpetrator of harm to S.N. has been identified. See TEX. FAM.CODE ANN. § 263.307(b)(2), (5), (6), (7), (9).
[1] The pertinent language of former Rule 90(a) varies somewhat from the current rule. Rule 90(a) provided:

The court of appeals shall decide every substantial issue raised and necessary to disposition of the appeal and hand down a written opinion which shall be as brief as practicable. Where the issues are clearly settled, the court shall write a brief memorandum opinion which should not be published.
TEX.R.APP. P. 90(a), 707-708 S.W.2d (Tex. Cases) lxxxv (Tex. 1986, amended 1997).
[2] The Rules of Civil Procedure governed appellate proceedings until the adoption of the Rules of Appellate Procedure in 1986. See Jennifer Adams, Comment, Law Today; Gone Tomorrow, 53 BAYLOR L.REV. 659, 663-65 (2001) (discussing development of procedural rules governing Texas appellate court opinions). Former Rule 452 provided, "Opinions of the courts of appeals shall be as brief as practicable and yet dispose of every substantial issue raised and necessary to disposition of the appeal. Where the issues are clearly settled, the court shall write only a brief memorandum opinion, which should not be published." TEX.R. CIV. P. 452(a), 629-630 S.W.2d (Tex.Cases) xli (Tex.1982, repealed 1986).

The former Rule 451 provided more broadly that appellate courts should "decide all issues presented to them by proper assignments of error." Id. 451, 4 TEX. B.J. 557 (Tex.1941, amended 1983) (emphasis added). Rule 451 was amended in 1983 to conform with Rule 452. As amended Rule 451 provided, "The Court of Appeals shall decide all controlling issues presented by proper points or cross-points of error and announce its conclusions in a written opinion." Id., 661-662 S.W.2d (Tex.Cases) cv (Tex. 1983, repealed 1986) (emphasis added).
[3] In addition to the emphasis on efficiency discussed in more detail herein, the 2002 amendments represented a trade-off of competing interests "to eliminate the increasingly frequent practice of designating Courts of Appeals opinions as DNP, Do Not Publish." Chip Babcock, Texas Supreme Court Considers Abolishing Unpublished Opinions, HOUSTON LAWYER, Sept.-Oct. 2001 at 22, 22; see also Pamela Stanton Baron, Texas Courts of Appeals Online, 66 TEX. B.J. 46, 46 (2003).
[4] These four grounds for not issuing a memorandum opinion are the same grounds which formerly determined whether an opinion should be published. See TEX.R.APP.P. 47.4, 948-949 S.W.2d (Tex.Cases) cxxx (Tex. 1997, amended 2002).
[5] It is arguable that Rule 47.4's emphasis on brief memorandum opinions is counterproductive in the stated quest for efficiency because it is often more difficult to distill the parties' well-presented legal arguments to a few sentences than to provide a full discussion of the competing arguments and a reasoned explanation for the disposition. See Gonzalez v. McAllen Med. Ctr., Inc., 195 S.W.3d 680, 682 (Tex.2006) (per curiam) ("The plaintiffs here are entitled to a written opinion stating why the jury's verdict can or cannot be set aside."). The French mathematician and philosopher Blaise Pascal stated it this way, "I have made this letter longer than usual, because I lack the time to make it short." JOHN BARTLETT, FAMILIAR QUOTATIONS 270 (Justin Kaplan, ed., Little, Brown & Co., 16th ed. 1992) (translating Pascal's statement, "Je n'ai fait celle-ci plus longue parceque je n'ai pas eu le loisir de la faire plus courte.").
[6] The Department argues that we should consider this issue and Nancy's second issue (which challenges the jury's finding that she engaged in conduct or knowingly placed S.N. with persons who engaged in conduct which endangered S.N.) together because these predicate grounds for termination are interrelated. See In re J.T.G., 121 S.W.3d 117, 126 (Tex.App.-Fort Worth 2003, no pet.). While we agree that these grounds are frequently interrelated, we do not find them to be so in this case.
[*] (The Court takes a wandering tour of one facet of judicial restraint in its first 10 pages that explains why I was correct in my dissenting opinion on rehearing in Fagan v. Crittenden, 166 S.W.3d 748 (Tex.App.-Waco 2005, pet. denied) (Gray, C.J., dissenting) when I argued that we had failed to address the issues that controlled the then existing rights of the parties with interest in real property and a right-of-way that crossed it. The Court, however, avoids any mention of Fagan in its Opinion on Rehearing. Maybe that is because, if they actually exercised the judicial restraint discussed in the Opinion on Rehearing in this case, there would be no reason for the opinion at all. The issues they address in the Opinion on Rehearing are potentially relevant if the appellant has another child, and if the State seeks to terminate her parental rights to that child, and if the predicate act discussed in the Opinion on Rehearing is the only basis for that attempted termination, and if the trial court, in that as yet un-filed case to terminate the parental rights to an as yet unborn or even conceived child, refused to allow the appellant to show that the ground upon which termination was being sought (remember this is all happening in the future) was not supported by sufficient evidence at the time the determination was made. It is difficult to imagine a more speculative reason for a determination that resolves no dispute that is relevant to the resolution of the dispute that exists between the parties to this proceeding. On the other hand, in the actual proceeding currently before us, the State cannot even challenge the Court's determination or its methodology of deciding this issue because a successful challenge to the Court's holding on the issue addressed in the Opinion on Rehearing would not change the judgment which the State seeks to affirm, termination of parental rights in this case. I would deny the motion for rehearing without an opinion and thus concur in the judgment of the Court to the extent, and only to the extent, that it affirms the judgment of the trial court.)