**MODIFY and AFFIRM; and Opinion Filed July 12, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-00829-CV

**STEVE M. HILL, D/B/A HILL ROOFING & CONSTRUCTION, Appellant**

**V.**

**JANET AND ROBERT SPRACKLEN, Appellees**

**On Appeal from the 67th District Court**
**Tarrant County, Texas**
**Trial Court Cause No. 067-276646-15**

## MEMORANDUM OPINION

Before Justices Lang-Miers, Evans, and Schenck
Opinion by Justice Schenck

Appellant Steve M. Hill, d/b/a Hill Roofing & Construction ("Hill") appeals a judgment in

favor of Janet and Robert Spracklen in a suit that arose from the parties' dealings in connection

with the repair of the Spracklens' roof following a hail storm. Hill raises nine issues on appeal.

In his first five issues, Hill asserts the trial court erred (1) in finding he held himself out as a public

insurance adjuster in violation of section 4102.051 of the insurance code, (2) in concluding the

Spracklens are entitled to recover the insurance funds that were paid to Hill and that Hill is not

entitled to an offset for the value of the goods or services he provided, (3) in sanctioning Hill to

pay $100 per day until he produced documents requested in discovery, (4) in ordering death penalty

sanctions against him, and (5) in giving surplus jury instructions and in failing to submit to the

jury a question on the issue of causation. In his sixth and seventh issues, Hill challenges the

sufficiency of the evidence to establish his acts or omissions were committed knowingly or intentionally and to support an award for mental anguish damages. In his last two issues, Hill asserts the Spracklens are not entitled to exemplary damages. We affirm the trial court's judgment as modified herein. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

## BACKGROUND

In 2013, a hail storm damaged the roof of the Spracklens' residence. They notified their homeowners' insurance carrier of the damage and contacted Hill. The insurance company assessed the damage and issued a check to the Spracklens in the amount of $5,917.33. Hill met with Janet Spracklen and gave her his standard form contract and insurance authorization, and a brochure advertising the services of his company. The brochure stated, among other things, a reason to choose Hill is "[w]e have licensed insurance adjusters on staff to assist on claims on your behalf." The "Acceptance of Agreement" provision of the contract provided that:

> This agreement is for FULL SCOPE OF INSURANCE ESTIMATE AND UPGRADES and is subject to insurance company approval. By signing this agreement homeowner authorizes Hill Roofing . [sic] to pursue homeowner's best interests for all repairs at a price agreeable to the insurance company and Hill Roofing, and at NO ADDITIONAL COST TO HOMEOWNER EXCEPT THE INSURANCE DEDUCTIBLE AND UPGRADES. The final price agreed to between the insurance company and Hill Roofing shall be the final contract price.

The insurance authorization form included:

> By signing this agreement the homeowner authorizes HILL ROOFING to work on behalf of the insured to secure approval for estimate of necessary roof and any other repairs of the home. Once insurance approval is secured, this agreement becomes a binding contract for the work approved by the insurance company, homeowner and HILL ROOFING. Cost of job will be as per insurance estimate.
>
> This agreement does not obligate HILL ROOFING or the homeowner in any way, unless work is approved by the insurance company on homeowner's behalf.

–2–

Hill estimated the cost to repair the damage to the Spracklens' home to be $12,960.70. Janet signed the contract and the insurance authorization and the Spracklens paid Hill the $5,917.33 they had received from their insurer.

The Spracklens were dissatisfied with Hill's work and eventually fired him. To collect the amount Hill claimed the Spracklens owed, Hill filed suit against Janet in a justice court. In his filing, Hill accused Janet of misappropriating insurance money to pay bills and asserted that she was behind on her mortgage payments. That case was later dismissed for want of prosecution. Meanwhile, in January 2015, the Spracklens sued Hill claiming the contract they entered into with Hill is void under section 4102.207(b) of the Texas Insurance Code and that Hill made misrepresentations concerning his services, falsely represented himself to be a public insurance adjuster, and violated the Texas Debt Collection Practices Act (TDCPA).[1] They sought to recover actual damages—including mental anguish damages, statutory damages, exemplary damages, attorney's fees, prejudgment and post judgment interest, and costs. Hill answered and filed counterclaims against the Spracklens alleging breach of contract, quantum meruit, unjust enrichment, tortious interference with contract, and a right to offset.

On May 19, 2015, the trial court granted the Spracklens' motion for partial summary judgment and declared Hill's form contract and insurance authorization to be illegal, and unenforceable—finding both to violate chapter 4102 of the Texas Insurance Code, which prohibits a person from holding himself out as a public insurance adjuster unless the person actually holds a license or certificate issued by the commissioner. As a consequence, it ruled the Spracklens are not liable for the payment of any services rendered by Hill. TEX. INS. CODE ANN. art. 4102.051(a).

---

[1] The Spracklens contend that in making demands for payment, Hill threatened to place a lien on their property and to have them arrested for theft of services.

The Spracklens served requests for production, interrogatories and requests for admission on Hill. Hill responded asserting numerous objections. On July 7, 2015, the Spracklens filed a motion to compel discovery from Hill. On September 3, 2015, the trial court ordered Hill to correct his responses to the discovery requests within fifteen days. Instead, on the 15th day Hill filed a petition in bankruptcy. Approximately six months later, the bankruptcy proceeding was dismissed with prejudice.

The Spracklens again sought to compel the discovery they had earlier requested from Hill. On April 4, 2016, the trial court entered an order overruling Hill's objections to the Spracklens' discovery and ordered Hill to fully comply with each of the discovery requests within fifteen days. The deadline for Hill to fully comply came and went without Hill complying.

The Spracklens filed a motion to enforce the April order. The motion was set for hearing on May 19. The day before the hearing, Hill served supplemental discovery responses re-urging objections the trial court had previously overruled and asserting new objections. Hill professed two reasons for not having discoverable documents. First, he claimed his hard drive died. Second, he claimed he did not keep documents in electronic form and, the paper files he kept had been stored at his father's house and were disposed of by his sisters shortly after their father died, during the pendency of the lawsuit. Hill gave these excuses despite having testified during the bankruptcy court's creditors meeting in October 2015 that he could look up records of past customers as needed.

On May 27, the trial court granted the Spracklens' motion to enforce the April order. The trial court—pursuant to (1) the applicable rules of civil procedure and based on the evidence in the record, (2) the court's evaluation of the testimony of Hill at the September 3, 2015 hearing on the Spracklens' first motion to compel and his behavior at such hearing and during the pendency of the case, and (3) for the reasons set forth by the Spracklens in their motions to compel—found Hill

had engaged in conduct constituting abuse of the discovery process and had failed to comply with the court's April 4 order. The trial court overruled the objections asserted in Hill's supplemental discovery responses and ordered that commencing on June 10, a $100 per day sanction would accrue against Hill for each day Hill failed to fully comply with the Spracklens' requests for production, and that Hill pay the Spracklens' attorney's fees of $1,200 by June 10. The June 10 deadline for Hill to comply with the May 27 order passed without Hill producing documents or paying $1,200 in attorney's fees.

In the meantime, on June 3, 2016, the trial court granted the Spracklens' second motion for partial summary judgment on all of Hills' counterclaims and ordered that the Spracklens recover from Hill the funds paid to him.

On June 16, the Spracklens filed another motion to hold Hill in contempt and for sanctions. A hearing on the Spracklens' motion was held on June 29. Hill did not attend. During that hearing, it became apparent that Hill was refusing to produce documents because he feared the case would turn into a class-action suit because the Spracklens' lawyers certified a class in a case against another roofing contractor under similar circumstances. On July 20, the trial court entered an order holding Hill in contempt and assessing additional sanctions and made findings and ordered as follows: (1) Hill's knowing and intentional violation of the DTPA, as alleged by the Spracklens, shall be taken to be established, (2) Hill was to pay additional attorney's fees of $1,200 as well as the previously awarded fees, and pay the accumulated $100 per diem sanction ($1,800 at that time) and (3) Hill be disallowed from any further discovery of any kind unless and until he complies with the court's orders of April 4 and May 27. The deadline for Hill to pay the attorney's fees and the accumulated per diem sanction was August 18.

Hill failed to comply with the July 20 order. On November 18, 2016, the Spracklens deposed Hill. During his deposition, Hill confirmed that he had made a concerted decision not to pay the Spracklens' counsel as ordered by the trial court.

On December 29, the Spracklens filed a motion to hold Hill in criminal contempt of court and to impose death-penalty sanctions. In their motion, the Spracklens set forth Hill's history of discovery abuse and deliberate violations of the court's orders and his defiant attitude towards the court, the court's orders, and the judicial system. The Spracklens provided the trial court with video excerpts of portions of Hill's deposition that depicted his defiant attitude. Hill demanded that the trial court serve him with a show cause hearing notice prior to convening a criminal contempt hearing. The trial court issued such an order. Hill evaded service of the show cause order by the constable and claimed his attorney's service of the order on him was ineffective.

On February 1, 2017, the trial court heard the Spracklens' criminal contempt and death-penalty sanctions motion. Hill, again, did not appear in person. On February 3, the court entered an order denying the Spracklens' request that the court hold Hill in criminal contempt, but granted their request that the court impose death-penalty sanctions against Hill and struck Hill's pleadings. With the striking of Hill's pleadings, the case proceeded to a jury trial on March 6, 2017, on the issue of damages only. The exemplary damages issue on the Spracklens' fraud and violations of the Texas Debt Collection Act claims was bifurcated. Hill walked out of the courtroom after the first phase of the damages trial. He was not present during the second phase.

At the conclusion of the first phase of the damages trial, the trial court instructed the jury that the court had already: declared Hill's contracts with the Spracklens to be illegal, void and unenforceable; determined that the Spracklens do not owe Hill any money for his services; and determined that Hill is liable to the Spracklens for: (1) engaging in conduct that amounted to fraud; (2) engaging in false, misleading, or deceptive acts or practices that violated the DTPA; (3)

engaging in an unconscionable action or course of action that violated the DTPA; and (4) engaging in prohibited debt collection methods in violation of the Texas Debt Collection Act. The court further instructed the jury that because Hill's liability to the Spracklens had already been determined, the only issues it would be deciding would be the amount of damages, if any, and attorney's fees. The jury awarded the Spracklens: (1) $2,500 each in mental anguish damages;[2] (2) $35,000 each in damages because Hill's conduct was committed knowingly and intentionally;[3] and (3) attorney's fees for representation through trial totaling $178,970.35, attorney's fees for representation through appeal to the court of appeals of $45,000, and attorney's fees for representation at the Texas Supreme Court totaling $60,000. The jury was then asked to determine the amount of exemplary damages that should be awarded. The jury awarded the Spracklens $5,000 each in exemplary damages.

The trial court then entered a final judgment incorporating its prior rulings and orders and the jury's verdicts.[4] The trial court denied Hill's motion for new trial and this appeal followed.

## DISCUSSION

### I. Summary Judgment

In his first two issues, Hill urges the trial court erred in granting the Spracklens' motions for partial summary judgment on the Spracklens' claim Hill violated section 4102.051 of the Texas Insurance Code by holding himself out as a public insurance adjuster and in finding the Spracklens

---

[2] The jury was not asked to determine economic damages as they were liquidated in the amount of $5,917.23.

[3] The trial court reduced this award to two times actual damages.

[4] The final judgment awarded the Spracklens: economic damages of $5,917.23 (the refund of the amount paid to Hill); additional damages of $11,834.66 for Hill's knowing and intentional conduct (two times the economic damages); a total of $5,000 for mental anguish damages; a total of $10,000 in additional damages for Hill's knowing and intentional conduct (two times mental anguish damages); attorney's fees of $181,370.35 for representation in the trial court (including the previously awarded fees as sanctions totaling $2,400); conditional appellate attorney's fees; a total of $10,000 in exemplary damages; $26,900 for the per diem sanctions; prejudgment and post judgment interest; and costs. In addition, the trial court noted in the final judgment that during the first phase of trial, Hill produced for the first time documents that had been requested by the Spracklens and ordered to be produced by the trial court. The court found Hill's conduct during trial further supported the striking of Hill's pleadings. At trial, Hill presented text messages between himself and Robert Spracklen that went to the heart of the Spracklens' debt collection act claims. Hill had not previously produced these messages despite having been ordered to do so. In addition, Hill presented multiple versions of what were claimed to be copies of the original contract signed by Janet Spracklen.

were entitled to recover the funds Hill received on their behalf and that Hill was not entitled to an offset for the value of the goods or services he supplied to the Spracklens. The Second District Court of Appeals' decision in *Lon Smith & Assoc., Inc. v. Key*, 527 S.W.3d 604 (Tex. App.—Fort Worth 2017, pet. denied) controls our disposition of these issues.[5]

Like the Spracklens, the Keys asserted that the Acceptance and Agreement provision in the contract with Lon Smith & Associates ("Lon Smith") violated Texas Insurance Code's section 4102.051's prohibition against a corporation acting or holding itself out as a public insurance adjuster in the absence of a license.[6] *Id.* at 611. Accordingly, the Keys claimed the agreement was illegal, void, and unenforceable.[7] *Id.*

The Keys' contract with Lon Smith contained an Acceptance and Agreement provision that is, for all practical purposes, the same as the Acceptance of Agreement provision in the Spracklens' contract with Hill.[8] In addition, like Lon Smith, Hill was not a licensed public insurance adjuster.

---

[5] The Texas Supreme Court transferred this case from the Second District Court of Appeals to this Court. *See* TEX. GOV'T CODE ANN. § 73.001. In this procedural posture, we are bound to apply the precedent of that court. TEX. R. APP. P. 41.3.

[6] Chapter 4102 expressly prohibits a "person" from acting as or holding himself out to be a public insurance adjuster in Texas without a license. *See* TEX. INS. CODE ANN. art. 4102.051(a) (providing that "[a] person may not act as a public insurance adjuster in this state or hold himself or herself out to be a public insurance adjuster in this state unless the person holds a license issued by the commissioner"). A "public insurance adjuster" is "a person who, for direct, indirect, or any other compensation . . . acts on behalf of an insured in negotiating for or effecting the settlement of a claim or claims" while acting as a public insurance adjuster and "also includes advertising, soliciting business, and holding oneself out to the public as an adjuster of claims." *Id.* § 4102.001(3)(A)(ii).

[7] Any contract for services regulated by chapter 4102 that is entered into by an insured with a person in violation of the chapter's licensing requirements "may be voided at the option of the insured." *Id.* § 4102.207(a).

[8] The "Acceptance and Agreement" provision in the Lon Smith contract provided that:

> [t]his Agreement is for FULL SCOPE OF INSURANCE ESTIMATE AND UPGRADES and is subject to insurance company approval. By signing this agreement homeowner authorizes Lon Smith Roofing and Construction ("LSRC") to pursue homeowners ['] best interest for all repairs, at a price agreeable to the insurance company and LSRC. The final price agreed to between the insurance company and LSRC shall be the final contract price.

The "Acceptance of Agreement" provision of the Hill contract provided that:

> This agreement is for FULL SCOPE OF INSURANCE ESTIMATE AND UPGRADES and is subject to insurance company approval. By signing this agreement homeowner authorizes Hill Roofing . [sic] to pursue homeowner's best interests for all repairs at a price agreeable to the insurance company and Hill Roofing, and at NO ADDITIONAL COST TO HOMEOWNER EXCEPT THE INSURANCE DEDUCTIBLE AND UPGRADES. The final price agreed to between the insurance company and Hill Roofing shall be the final contract price.

In his first issue, Hill points to an Insurance Commissioner Bulletin authorizing roofing companies to discuss the repair estimate and supplements and clarifications and claims the language he used in his contract falls within the guidelines provided by the Bulletin. *See* TEX. DEP'T INS. COMM'R BULLETIN B-0017-12. Lon Smith made this same argument in the *Key* case and the court of appeals rejected it noting that the same Bulletin provides that a roofing company may not advocate on behalf of a consumer or discuss insurance policy coverages and exclusions, and concluding by the express terms of Lon Smith's contract it agreed to advocate on behalf of the Keys, which is conduct prohibited by the Bulletin. *Key*, 527 S.W.3d at 620. We likewise conclude that by contracting to "pursue homeowners['] best interests" and to reach a settlement with the Spracklens' insurance company, Hill explicitly agreed to advocate on behalf of a consumer, which is prohibited conduct. We overrule Hill's first issue.

In his second issue, Hill urges the trial court erred in holding the Spracklens are entitled to recover the $5,917.33 they paid to Hill without any offset for the value of the roof Hill installed. Because Hill violated section 4102.051 of the insurance code, the Spracklens were entitled to void their agreements with him. TEX. INS. CODE ANN. art. 4102.207(a). Because the agreements are void, the Spracklens are not liable for the payment of any past services rendered, or future services to be rendered by Hill. *Id.* § 4102.207(b). Because unlicensed public insurance adjusters are not subject to the checks, balances, and penalties that licensed public insurance adjusters are, section 4102.207's disgorgement provision is a punitive deterrent. *Key*, 527 S.W.3d at 634–35. To construe section 4102.207 as Hill desires would in effect render it toothless; if construction and roofing companies that are unlicensed as public insurance adjusters are able to successfully solicit repair contracts by agreeing to act as the insured's public insurance adjuster and nonetheless retain the monies paid to them for their repair or roofing services, then from a cost-benefit standpoint, the statute imposes no financial incentive for such companies to stop acting as unlicensed public

insurance adjusters. *Id.* at 635.[9] Accordingly, we conclude the trial court did not err in allowing the Spracklens to recover the payment they made to Hill without any offset. In light of our disposition of this complaint, we need not address Hill's fourth argument in his fifth issue that the trial court erred in failing to submit jury questions on his breach of contract (offset) and quantum meruit claims. TEX. R. APP. P. 47.1. We overrule Hill's second issue and the fourth argument under his fifth issue.

## II.    Sanctions

In his third and fourth issues, Hill challenges the trial court's imposition of sanctions.

A trial court's ruling on a motion for sanctions is reviewed under an abuse of discretion standard. *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004). The test for an abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action, but "whether the court acted without reference to any guiding rules and principles. *Downer v. Aquamarine Oper., Inc.*, 701 S.W.2d 238, 241 (Tex. 1985). The trial court's ruling should be reversed only if it was arbitrary or unreasonable. *Id.*

In considering whether the sanctions were just, this Court must review the entire record, including the evidence, arguments of counsel, written discovery on file, and the circumstances surrounding the party's discovery abuse. *See Hill & Griffith Co. v. Bryant*, 139 S.W.3d 688, 694 (Tex. App.—Tyler 2004, pet. denied). In conducting this review, we view the evidence in the light most favorable to the trial court's ruling, with all reasonable inferences being drawn in support of the judgment. *See Davis v. Rupe*, 307 S.W.3d 528, 530 (Tex. App.—Dallas 2010, no. pet.).

---

[9] In recognition of this fact, several states have enacted statutory disgorgement provisions similar to section 4102.207(b) that are applicable to unlicensed contractors or public insurance adjusters and preclude an offset or any type of recovery by the unlicensed contractor or adjuster for any services rendered. *See, e.g.*, CAL. BUS. & PROF. CODE § 7031 (West 2017) (providing that a person who utilizes the services of unlicensed contractor may bring action to "recover all compensation paid to unlicensed contractor"); NEV. REV. STAT. § 624.700(4) (West 2015) (providing that contract entered into by unlicensed contractor is void ab initio).

A trial court has broad inherent powers "to enable courts to effectively perform their judicial functions and to protect their dignity, independence, and integrity." TEX. GOV'T CODE ANN. § 21.001(a); *Davis*, 307 S.W.3d. at 531; *Vondy v. Comm'rs Court of Uvalde Cty.*, 620 S.W.2d 104, 109 (Tex. 1981). Inherent power "may be exercised to the extent necessary to deter, alleviate, and counteract bad faith abuse of the judicial process, such as any significant interference with the traditional core functions of the court." *Davis*, 307 S.W.3d at 531. Similarly, Rule 215 of the Texas Rules of Civil Procedure provides trial courts broad authority to fashion orders as are just to prevent the flouting of the discovery rules and court orders. *See Braden v. Downey*, 811 S.W.2d 922, 930 (Tex. 1991) (citing TEX. R. CIV. P. 215).

## A. Per Diem Sanction

In his third issue, Hill argues the trial court abused its discretion in ordering that he pay per diem sanctions. In this regard, Hill challenges only the interlocutory sanctions order, but not the Final Judgment's award of $26,900 in discovery sanctions. The Final Judgment dated March 22, 2017, incorporated and superseded the May 27, 2015 order granting the per diem sanctions. Accordingly, Hill's issue challenging the interlocutory sanctions order is moot. *See Green v. Allied Interest, Inc.*, No. 03-97-00510-CV, 1998 WL 105154, at *2 (Tex. App.—Austin Mar. 12, 1998, pet. denied) (mem. op.) (interlocutory order awarding per diem sanctions for failure to appear at deposition superseded and mooted by final judgment that incorporated a fixed amount of sanctions); *League City v. Tex. Windstorm Ins. Assoc.*, No. 01-15-00117-CV, 2017 WL 405816, at *11 (Tex. App.—Houston [1st Dist.] Jan. 31, 2017, no pet.) (mem. op.). We overrule Hill's third issue.

## B. Death Penalty Sanction

In his fourth issue, Hill asserts that the trial court abused its discretion in imposing death-penalty sanctions. Texas Rule of Civil Procedure 215.2 permits a trial court to sanction a party for

failing to "comply with proper discovery requests or to obey an order to provide or permit discovery . . . ." TEX. R. CIV. P. 215.2. Among the sanctions available to a trial court under these circumstances is:

> an order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing with or without prejudice the action or proceedings or any part thereof, or rendering a judgment by default against the disobedient party[.]

*Id.* 215.2(b)(5). The sanction a trial court chooses to impose must be just. *Id.* 215.2(b). The determination of whether an imposition of sanctions is just is measured by two standards. *TransAm. Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991). First, a direct relationship must exist between the offensive conduct and the sanction imposed. *Id.* Second, sanctions must not be excessive. *Id.* The imposition of very severe sanctions is limited, not only by these standards, but by the overarching dictate of constitutional due process. *Id.* Discovery sanctions cannot be used to adjudicate the merits of a party's claims or defenses unless a party's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit. *Id.* at 918. However, if a party refuses to produce material evidence, despite the imposition of lesser sanctions, the court may properly presume that an asserted claim or defense lacks merit and may dispose of it. *Id.*

In their motion to impose death-penalty sanctions, the Spracklens catalogued Hill's history of misconduct, including his deliberate and continuing violation of multiple court orders and his abusive and defiant behavior at his deposition. In granting the Spracklens' request for death-penalty sanctions, the trial court considered the Spracklens' motion, the response, and the evidence presented at the hearing, which included the admission of Hill's counsel that Hill chose not to appear at the hearing. In addition, in the final judgment, the trial court found Hill's conduct during trial provided additional support and grounds for striking Hill's pleadings, as previously ordered by the court. At trial, Hill introduced documents he should have produced during the course of

the case, but failed to do so despite having been repeatedly ordered to do so, and presented what appeared to be inconsistent forms of the contract Janet Spracklen supposedly signed. *See, Response Time, Inc. v. Sterling Commerce (N. Am.), Inc.*, 95 S.W.3d 656, 661–62 (Tex. App.—Dallas 2002, no pet.) (upholding death-penalty sanction in light of, *inter alia*, defendant's fabrication of evidence, false testimony, and obstructionist tactics to conceal wrongdoing); *Daniel v. Kelley Oil Corp.*, 981 S.W.2d 230, 235 (Tex. App.—Houston (1st Dist.) 1998, pet. denied) (upholding death-penalty sanction in light of party's fabrication of evidence and noting that fabrication of evidence is a "third degree felony" and is an "act so destructive of the integrity of our judicial process [that it] deserves serious punishment.").

Hill provided inconsistent stories concerning his maintenance of documents and did produce various forms of the Spracklens' contract. Moreover, the trial court questioned Hill on how he would keep track of warranty issues if he did not maintain copies of his contracts. In addition, during the bankruptcy proceeding, Hill indicated that he could look up customer information on his computer. The trial court was within its bounds as the fact finder in the contempt proceeding to reach its own conclusion as to the credibility of Hill and his representations. *In re A.R.*, 236 S.W.3d 460, 471 (Tex. App.—Dallas 2007, no pet.). Hill now contends his failure to produce copies of contracts he had with other homeowners containing language identical or similar to the language contained in his contract with the Spracklens, was the genesis for the trial court's death-penalty sanction. Hill then asserts the trial court erred in concluding he had the documents and simply refused to produce them. Hill presented no evidence to support a claim that he did not possess documents responsive to the Spracklens' discovery requests. Hill relies on his discovery responses disclaiming possession of documents, but the trial court was well within its discretion, in view of his inconsistent and seemingly selective

explanation, to conclude that Hill had the information requested and having been ordered three times to provide the information, deliberately refused to do so. *Id.*

Next, Hill urges that in the broader "scheme of things," these documents would seem to have little or no relevance to the Spracklens' claims. The trial court thought otherwise and overruled Hill's objections to the discovery requests and noted "that Mr. Hill has personally engaged in a continuing pattern and practice of discovery abuse by withholding requested documents and information that is highly relevant to the merits of Plaintiffs' claims against Defendant." Thus, the record shows Hill refused to produce material evidence, despite the imposition of lesser sanctions. Accordingly, the trial court could presume that Hill's claims and defenses lacked merit and could dispose of them. *TransAm.*, 811 S.W.2d at 918.

On this record, we conclude that the imposition of death-penalty sanctions was just because it directly related to the conduct at issue in the case—that is, violating the trial court's orders and hindering the discovery process for the Spracklens, the sanctions were not excessive, and the conduct here reasonably justified a presumption that Hill's claims and defenses lacked merit. *Id.* Accordingly, the trial court did not abuse its discretion in ordering death-penalty sanctions in this case. We overrule Hill's fourth issue.

## III.    Jury Charge

In his fifth issue, Hill contends the trial court committed reversible jury charge error. A trial court has considerable discretion in framing a jury charge. *Redwine v. AAA Life Ins. Co.*, 852 S.W.2d 10, 14 (Tex. App.—Dallas 1993, no writ). In determining whether there has been an abuse of discretion, this Court may not substitute its judgment for that of the trial court but must determine only whether the trial court's action was arbitrary or unreasonable. *Id.*

First, Hill asserts the trial court erred in submitting surplus jury instructions that constituted a comment on the weight of the evidence. More particularly, Hill claims the trial court erred in instructing the jury that:

(1) it had already declared Hill's contracts with the Spracklens to be illegal, void, and unenforceable, and

(2) it had already determined (a) the Spracklens do not owe Hill any money for his services, and (b) Hill is liable to the Spracklens for (i) engaging in conduct that amounts to fraud, (ii) engaging in false, misleading, or deceptive acts or practices that violated the DTPA, (iii) engaging in an unconscionable action or course of action, and (iv) engaging in prohibited debt collection methods in violation of the Texas Debt Collections Act, and

(3) Hill's liability to the Spracklens had already been determined and the only issues it would be deciding concerned damages and attorney's fees.

An impermissible comment on the weight of the evidence occurs when "after examining the entire charge, it is determined that the judge assumed the truth of a material controverted fact, or exaggerates, minimizes, or withdraws some pertinent evidence from the jury's consideration." *Am. Bankers Ins. Co. of Fla. v. Caruth*, 786 S.W.2d 427, 434 (Tex. App.—Dallas 1990, no writ). The comment must also be one that probably caused the rendition of an improper judgment. *Id.* Incidental comments are permissible when necessary as part of an explanatory instruction or definition. *Id.*

If an instruction might aid the jury in answering the issues presented to them, or if there is any support in the evidence for an instruction, the instruction is proper. *Thota v. Young*, 366 S.W.3d 678, 687 (Tex. 2012) (citing *La.-Pac. Corp. v. Knighten*, 976 S.W.2d 674, 676 (Tex. 1998)). Prior to trial, the court struck Hill's pleadings, so liability was no longer an issue to be

determined by the jury. It was necessary for the trial court to give some instruction to the jury about the matters that would be presented for their determination. *Imagine Auto. Grp. v. Boardwalk Motor Cars, Ltd.*, 430 S.W.3d 620, 646 (Tex. App.—Dallas 2014, pet. denied). The judge's instructions were short, defining the four causes of action for which the jury was to determine damages and informing the jury that Hill is liable to the Spracklens on those causes of action. Here, the only questions for the jury were the amounts of damages and attorney's fees. All of the damages questions included the limitation "if any." Notably, the jury did not award the Spracklens all of the categories of damages submitted. We conclude the trial court's instructions aided the jury in answering the issues presented to them. They did not constitute improper comments on the weight of the evidence. Accordingly, we overrule Hill's first argument under his fifth issue.

Next, Hill claims the trial court erred by failing to submit questions on causal connection between the actions of Hill and the Spracklens' damages. The trial court did in fact tie the question of the Spracklens' mental anguish damages to Hill's conduct.[10] We overrule Hill's second argument under his fifth issue.

Hill further argues the trial court used an incorrect definition of mental anguish in the charge. Generally, we review the trial court's decisions on how to charge the jury for an abuse of discretion; however, when the appellant challenges a definition as legally incorrect, we review the definition de novo. *Transcon. Ins. Co. v. Crump*, 330 S.W.3d 211, 221 (Tex. 2010).

The trial court used the Texas Pattern Jury Charge definition of mental anguish—"the emotional pain, torment, and suffering experienced by an individual because of Hill's conduct." Hill contends the court wrongfully used the pattern jury charge for mental anguish because it

---

[10] The question on mental anguish damages asked "What sum of money, if any, if paid now in cash, would fairly and reasonably compensate the Spracklens for their damages, if any, that resulted from Hill's conduct determined by the Court in Instruction Nos. 5, 6, 7, and 8 found on pages 3 and 4 herein?"

relates to wrongful death and personal injury cases, not to a DTPA claim. While Hill does not explain why his proposed language would have likely led to a different result, he asserts the trial court should have defined mental anguish as:

> a relatively high degree of mental pain and distress. It is more than mere disappointment, anger, resentment, or embarrassment, although it may include all of these. It includes a mental sensation of pain resulting from such painful emotion as grief, severe disappointment, indignation, wounded pride, shame, despair and/or public humiliation.

Hill cites no authority to support the contention that the language used materially differed or could have been expected to lead to a different result, and we have found none. We overrule Hill's third argument under his fifth issue.

## IV.     Knowing or Intentional Conduct

In his sixth issue, Hill challenges the legal and factual sufficiency of the evidence to support a finding that any acts or omissions of his were committed knowingly or intentionally. Hill disregards the trial court's July 20 sanction order, in which the court ordered that "Hill's knowing and intentional violation of the DTPA, as alleged by the Spracklens, shall be taken to be established." Hill presents no argument challenging the validity of that sanction order. Because the unchallenged sanction order provides an independent basis for a knowing and intentional violation finding, we need not consider Hill's evidentiary challenge. TEX. R. APP. P. 47.1; *see Pollit v. Computer Comforts, Inc.*, 01-12-00785-CV, 2014 WL 7474073, at *3 (Tex. App.—Houston [1st Dist.] Dec. 30, 2014, no pet.) (mem. op.). We overrule Hill's sixth issue.

## V.     Mental Anguish

In his seventh issue, Hill urges there was insufficient evidence of any mental anguish damages suffered by the Spracklens. More particularly, Hill contends the evidence presented does not rise to the level of legally compensable mental anguish.

–17–

To recover mental anguish damages, the Plaintiff must introduce direct evidence of the nature, duration, and severity of the mental anguish, thus establishing a substantial disruption in the Plaintiff's daily routine. *See Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 54 (Tex. 1997); *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995). The evidence must show a "high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger." *Jabri v. Alsayyed*, 145 S.W.3d 660, 669 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

In this case, Janet Spracklen testified Hill's actions caused her (1) to feel stressed, depressed, angry, very afraid, scared, embarrassed and humiliated; (2) to have trouble sleeping, focusing, and concentrating; (3) to have physical problems, including an upset stomach, headaches, shaking, rapid heart rate, anxiety, and a flare up of her psoriatic arthritis, (4) to fear she would be arrested and that a lien would be placed on her home; and (5) to withdraw from going to business events and socializing with friends. She also testified that Hill's filing the justice court lawsuit and serving her at work further caused her to become embarrassed, humiliated, and scared. She further testified the FBI notified her that Hill had made a threat against her and her family, which made her scared and caused her to experience insomnia, headaches, rapid heart rate, and anxiety.

Robert Spracklen testified Hill's conduct (1) caused him to be afraid, upset, humiliated, embarrassed, and to have irregular sleep, (2) slowed the mending process of his recent surgeries following a car accident, (3) caused him to experience headaches, upset stomach, and shakes, (4) caused stress that resulted in diabetic pancreatic attacks that required hospitalization on four separate occasions for over a week at a time, (5) caused friction in his relationships with his family, and (6) caused him to withdraw from being a member of the Lions Club because he was embarrassed by things he heard Hill was saying about him. Robert further testified that the FBI

informed him that Hill had made a threat of violence against him and his family. Following that conversation, Robert was hospitalized again.

Based upon the record before us, we conclude the Spracklens presented evidence they each sustained compensable mental anguish. Although mere worry, anxiety, embarrassment, or anger by itself would not be enough to support an award of mental anguish, there is evidence that Hill's conduct caused a high degree of mental pain and distress in that it affected Janet's ability to sleep, focus, and concentrate, caused her to be very afraid, caused physical symptoms, and a withdrawal from business and social contacts. *See Reyelts v. Cross*, 968 F. Supp. 2d 835, 843–44 (N.D. Tex. 2013), *aff'd*, 566 Fed. Appx. 316 (5th Cir. 2014). As to Robert, there is likewise evidence that Hill's conduct caused a high degree of mental pain and distress in that it affected Robert's ability to sleep, caused him to be afraid, slowed the healing process of his recent surgeries, created physical symptoms, resulted in hospitalizations, caused friction in his relationships with his family, and impacted his socialization. *See id.* Accordingly, we overrule Hill's seventh issue.

## VI. Damages

In his eighth issue, Hill contends the Spracklens are not entitled to exemplary damages because there are no actual damages findings in the record based on fraud or unfair debt collection practices.[11]

Prior to trial, the court determined the Spracklens were entitled to recover economic damages of $5,917.33. In addition, the trial court struck Hill's pleadings thereby establishing his liability for fraud and unfair debt collection practices. At trial, the jury found the Spracklens were entitled to recover mental anguish damages as a result of Hill's fraud, violations of the DTPA, and unfair debt collection practices. Thus, the Spracklens were awarded both economic and mental

---

[11] The exemplary damages issue was submitted on the Spracklens' fraud and Texas Debt Collections Act claims, but not on their DTPA claims.

anguish damages, which are actual damages in connection with their fraud and TDCPA claims. *See Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 155 (Tex. 2014).

To the extent Hill's eighth issue can be construed to be a complaint about the trial court's use of a broad form question concerning the Spracklens' mental anguish damages, Hill did not preserve that complaint for our review on appeal. Our rules of procedure establish the preservation requirements to raise a jury-charge complaint on appeal. *Thota*, 366 S.W.3d at 689. The complaining party must object before the trial court and "must point out distinctly the objectionable matter and the grounds of the objection." TEX. R. CIV. P. 274; *see also* TEX. R. APP. P. 33.1. Under Rule of Civil Procedure 274, "[a]ny complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections." TEX. R. CIV. P. 274. As a general rule, preservation requires (1) a timely objection "stating the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context," and (2) a ruling. *See* TEX. R. APP. P. 33.1. Stated differently, the test ultimately asks "whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling." *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992). Hill did not object to the broad form submission of the mental anguish damages question on the basis that he now appears to advance. *See Burbage v. Burbage*, 447 S.W.3d 249, 258 (Tex. 2014). Accordingly, that complaint has not be preserved on appeal. *See id.* We overrule Hill's eighth issue.

In his final issue, Hill contends the Spracklens are not entitled to both additional damages under the DTPA and exemplary damages because such award violates the one-satisfaction rule. The "one satisfaction" rule is the longstanding proposition that a plaintiff should not be

compensated twice for the same injury. *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 7 (Tex. 1991). "When a party tries a case on alternative theories of recovery and a jury returns favorable findings on two or more theories, the party has a right to a judgment on the theory entitling him to the greatest or most favorable relief." *Boyce Iron Works, Inc. v. Sw. Bell Tel. Co.*, 747 S.W.2d 785, 787 (Tex. 1988). The DTPA specifically limits recoveries. *See* TEX. BUS. & COM. CODE ANN. § 17.43 (providing that "no recovery shall be permitted under both this subchapter and another law of both damages and penalties for the same act or practice."). *See also Gunn Infiniti, Inc. v. O'Byrne*, 996 S.W.2d 854, 862 (Tex. 1999) (holding plaintiff must elect recovery under either DTPA or fraud after remand); *Holland v. Hayden*, 901 S.W.2d 763, 767 n.8 (Tex. App.—Houston [14th Dist.] 1995, writ denied) (holding that when defendant's negligent act and DTPA violation are both the proximate cause of the same damages, an award of both exemplary damages and statutory treble DTPA damages amounts to a double recovery of punitive damages).

In the instant case, the jury found Hill's fraud and violations of the DTPA and TDCPA were the cause of the same damages, namely mental anguish damages totaling $5,000. In the absence of separate and distinct findings of actual damages on the acts of fraud, DTPA violations and TDCPA violations, an award of exemplary damages and statutory damages would be necessarily predicated upon the same finding of actual damages and would amount to a double recovery of punitive damages. *See Birchfield v. Texarkana Memorial Hosp.*, 747 S.W.2d 361, 367 (Tex. 1987).

Here, the trial court awarded the Spracklens statutory damages totaling $10,000 in connection with the $5,000 mental anguish damages, and exemplary damages of $10,000. Because the awards are necessarily predicated upon the same finding of actual damages, they amount to a double recovery of punitive damages. Because these statutory and exemplary damage awards are the same, we will modify the judgment to allow a single recovery. We sustain Hill's ninth issue.

**THE SPRACKLENS' MOTION TO DISMISS THE APPEAL**

The Spracklens filed a motion to dismiss the appeal asserting that after Hill filed his appeal he continued his practice of deliberately disobeying the trial court's orders, including orders to answer post-judgment discovery or supersede the judgment, and orders that he personally appear at a February 16, 2018 hearing. While we share the Spracklens' concern about Hill's disregard for the trial court's orders and contemptuous conduct, due to the fact that we largely affirm the trial court's judgment on appeal, we do not address the merits of the Spracklens' motion and will deny the motion as moot.

**CONCLUSION**

We modify the trial court's judgment to remove the exemplary damage awards totaling $10,000. As modified, we affirm the trial court's judgment.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

170829F.P05

–22–



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

STEVE M. HILL, D/B/A HILL ROOFING
& CONSTRUCTION, Appellant

No. 05-17-00829-CV      V.

JANET AND ROBERT SPRACKLEN,
Appellee

On Appeal from the 67th District Court,
Tarrant County, Texas
Trial Court Cause No. 067-276646-15.
Opinion delivered by Justice Schenck.
Justices Lang-Miers and Evans
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

to remove the exemplary damage awards totaling $10,000.

It is **ORDERED** that, as modified, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee JANET AND ROBERT SPRACKLEN recover their costs of this appeal from appellant STEVE M. HILL, D/B/A HILL ROOFING & CONSTRUCTION.

Judgment entered this 12th day of July, 2018.